## McCLELLAND *against* McCALMONT.

Unseated town-lots are subject to an assessment and sale for taxes.

Error to the Common Pleas of *Venango* county.

This was an action of ejectment in which *Hugh McClelland*
was plaintiff, and *Alexander McCalmont* was defendant.   The
only question which was presented was, whether unseated town-
lots were the subjects of a sale for taxes, in pursuance of the pro-
visions of the act of 3d April, 1804.   The court below (*Shippen,*
president,) decided that they were.

*Galbraith* and *Selden* for plaintiff in error.

*Pearson* and *Wallace* for defendant in error.

The opinion of the court was delivered by

Kennedy, J.—This was an action of ejectment, in which the
plaintiff in error claimed to recover the possession of a lot of ground

(McClelland *v.* McCalmont.)

situate in the town of *Franklin*, in *Venango* county, which had been vacant or unseated, and during that time had been assessed with taxes, and they not having been paid, was sold as unseated lands. The defendant at the sale became the purchaser of the lot in question, paid the purchase money and obtained a deed of conveyance for it from the treasurer of the county.

A case was agreed on and stated by the parties, for the opinion of the court below, subject to a writ of error, to be sued out by either. From the case stated, it appeared that the plaintiff was the owner of the lot before and at the time of the sale; that prior to that time it had never been enclosed or improved or settled on in any way; that it had been duly assessed with taxes, which remained unpaid, and that it was sold as unseated lands for taxes due and in arrear, and that the defendant became the purchaser, as is stated above.

The only question made and argued was, whether an unimproved and unseated town-lot of ground, could be lawfully assessed with taxes and sold as unseated lands, for the non-payment of taxes assessed upon it?

The court below decided that it could, and gave judgment for the defendant.

Unless such property be taxable, it follows as a matter of course, that no sale could be lawfully made of it for taxes: It therefore becomes necessary to inquire first, whether it be the subject of taxation by law or not.

By the eighth section of the act of Assembly of the 11th of April, 1799, entitled "An act to raise and collect county rates and levies," "all lands held by patent, warrant, location or improvement; *houses and lots* of ground, and ground rents; all grist-mills, saw-mills, fulling-mills, slitting-mills, rolling-mills, hemp-mills, oil-mills, snuff-mills, paper-mills and powder-mills; all furnaces, forges, bloomeries, distilleries, sugar-houses, malt-houses, breweries, tanyards and ferries, &c." are made taxable, and for that purpose the assessors are required to make out an account of the same; after which, they are to call to their aid the assistant assessors, and with them to value all these things according to the best of their knowledge, for what they may think they would *bona fide sell for in ready money.* The terms employed in this section of the act are sufficiently comprehensive and explicit to embrace unseated or unimproved town lots, or any other lots of ground. The terms "all lands," are amply sufficient to designate and include whatever will in law or otherwise come properly under the denomination of "land," which in law is a term of very comprehensive signification. And although the legislature have gone on further to enumerate specifically "houses and lots of ground, ground rents; all grist-mills, &c." yet I do not think it was done with a view to

exclude any thing that come in properly under the denomination of *lands*, the term before used; but rather consider it done for the purpose of amplifying and enlarging the list of taxable articles, than of limiting and restricting it. The various articles of property made taxable by this act, are to be valued according to what they, in the estimation of the assessors, would sell for, *bona fide, in ready money*, and not according to their *annual value*; which shows that the legislature intended that property which might be of no annual value—such, for instance, as unimproved and unseated lands, whether consisting of whole surveys, parts of surveys, or tracts, or of lots, or town lots, should be valued and assessed, as well as that which was productive of annual profit. For if this had not been their intention, would not the annual value or profit of real estate have been a more equitable and reasonable standard, by which to have ascertained the amount of the taxes to be paid by the owners? It would seem to have been the design of the legislature to assess and tax *all property*, from which money could be raised by a sale of it. Unseated town lots may be sold, and money sometimes raised in this way upon them more readily than by a sale of improved lots, where some regard is to be had for the cost of them. Beside, as an article of property, they are often not only more saleable, but more valuable, than the most of the unseated tracts of land in the same county; which are admitted to be the legitimate subjects of taxation, and are expressly made so by the act of assembly of the 3d of April, 1804. The act of the 28th of March, 1814, which has been referred to, and relied on by the counsel for the plaintiff in error, to show that vacant, or unseated lots, or pieces of ground, cannot be sold for taxes, is framed and predicated upon the very basis of the lots therein referred to, having been *regularly*, that is, *lawfully* assessed; but the owners could not be found to pay them; or when found, denied their ownership. All this appears in the preamble of the act.

It cannot be supposed that the legislature had any tender feeling of regard for, or disposition to indulge the owners of vacant or unseated town lots beyond what they have expressed for the owners of unseated lands generally, in directing them to be assessed with taxes, and if these are not paid by the owners, within due time, then by directing a sale to be made of the lands themselves, The policy of the state has ever been to encourage the improvement and settlement of all the lands within its territory—lots, I would say, as well as tracts. For it is precisely the same thing to the state, whether a tract of land remains entire and unsettled, or be divided into lots, containing each the one-eighth of an acre, and all remain unimproved and unseated. Nothing is added to her wealth or her strength in the latter case more than the former. Why should she forbear taxing town lots? Such an exception

(McClelland *v.* McCalmont.)

would rather encourage the non-settlement of them, and be contrary to her uniform policy. It would also be repugnant to the principles of equality and justice. The state is bound to protect every one of its citizens in the enjoyment of those rights which he has to property within its territory, as well as of those that belong to his person. In return for this protection, he is bound again to contribute to the support of the state, which is to be done in part by paying the taxes that are assessed. Again, is it not just and equal, that in proportion as the property is more or less valuable, in the right to the enjoyment of which he claims to be secured by the state, he should in the same proportion pay to the support of the expenses of the state? If so, he ought to pay taxes assessed upon unimproved town lots, as well as upon any other species of property; otherwise, one man may hold property worth fifty thousand dollars in the state, consisting of unimproved and unseated town lots and pay no taxes, while another, holding unimproved and unseated lands, consisting of what are commonly called *tracts* of land, worth not more than twenty thousand dollars, has to pay annually one hundred, or from that sum to two hundred dollars, which would be most unjust and unequal. No reason why town lots should not be assessed has been attempted to be given; and indeed it is difficult to conceive any; while on the contrary, justice, as well as sound policy, requires that they should.

If, then, they may be lawfully assessed, as I think they may, that is, I consider that the legislature has directed them to be assessed as often as any other real estate in the same county, it certainly will be thought strange if the legislature has provided no effectual mode for the collection of such taxes: yet if unimproved, vacant and unseated town lots, cannot be sold for taxes due and in arrear upon them, most certain it is that the legislature have omitted or failed to provide but a remedy. It was found impossible to collect the taxes due upon unseated tracts of land by any other mode than a sale of them. Hence, that was provided. If the owners of unseated *tracts* of land neglected paying the taxes upon them, and it therefore become necessary to authorize a sale of them, what reason can be imagined why the same neglect would not happen in the case of unseated or unimproved town lots? Every one of any experience in this matter knows, that the difficulty of getting the taxes paid in these cases are the same, and that without an authority to sell in both cases, it is utterly impracticable to collect or obtain the taxes due upon such property. It cannot be presumed for a moment, that this was not as well known to the legislature, as to any other part of the community. Neither can it be believed that they intended taxes to be assessed upon these town lots, without any design that they should be collected. If there be no other mode by which they can be collected with any certainty but that of a sale,

it will be a strong reason for believing that the legislature intended it, if there be any thing to be found in their acts in this behalf, that will bear such a construction.

It has been contended by the counsel for the plaintiff in error that in no part of any of the acts of assembly authorizing the sale of unseated lands for taxes, are the words "lot," or "piece of ground," or "town lot," used or expressly mentioned. That as often as the legislature have undertaken to describe what kind of unseated lands they intended should be sold for taxes, they have uniformly spoken of them as *tracts,* which does not give us the idea of, or include a town lot. To all this it may be answered, that they have almost invariably, throughout all the acts in directing the sale of unseated lands for taxes, used the term, "unseated lands." The second section of the act of the 3d of April, 1804, expressly directs, that *"all unseated lands* within this commonwealth, held by individuals, companies, or bodies corporate, either by improvement, warrant, patent, or *otherwise,* shall, for the purpose of raising county rates and levies, *be valued* and *assessed* in the same manner as other property:" and in a subsequent part of the same section, provides for, and authorizes the sale of them, calling them again "unseated lands," and not referring to them by the term, "tract or tracts." Indeed, I cannot discover where, in any of the acts on this subject, the term, "tract or tracts," has been used seemingly for the purpose of distinguishing them or that species of unseated lands from unimproved and unseated town lots, or any other unseated lots of ground; and certainly in no part of any of the acts is it used for the purpose of showing that town lots unseated were not to be sold for taxes as unseated lands. I think it very clear that the legislature has not made any distinction between a town lot of ground and a tract of land; whether seated or unseated, all are to be taxed, and if the taxes are not paid on those unseated, they are to be sold. A distinction between an unseated tract of land and town lot, does not appear to me to be attempted or aimed at in any place.

The great argument of the counsel for the plaintiff in error is, that the term "town lot" is not used in designating the real estate that shall be sold for the non-payment of taxes; but the term "all unseated lands" necessarily embraces lots, town lots and tracts, without distinction; and directs that all should be sold for taxes unpaid; so that the counsel for the plaintiff in error ought to have gone further, and have shown that town lots were expressly exempted after the use of terms which most explicitly embraced them. The act of the 28th of March, 1814, is said to be a legislative declaration of what the law is on this subject, and that they must have thought that there was no act authorizing the sale of unimproved and unseated town lots, or they would not have passed that act,

(McClelland *v.* McCalmont.)

which had no other object in view than to authorize the sale of such lots in the county and city of *Philadelphia.* This act seems to have been passed upon a special application, as clearly appears from its preamble; and most likely was passed to satisfy the doubts or notions of the applicants. It is not probable that it was passed after any particular investigation of the subject by the legislature. For I cannot but think that if they had examined the matter carefully, they would have been satisfied that the then existing laws authorized a sale of such property for taxes due upon it; or if not, they would have immediately passed a general act on the subject, authorizing it throughout the state. Acts of the legislature have been passed sometimes merely declarative of what the law was before. This is done sometimes upon the suggestion of those who may doubt about what the law is on the subject, or may be mistaken altogether in respect to it. I know that vacant and unseated town lots, in some counties of the state, have long since been assessed for taxes and sold as unseated lands; and I can perceive no reason why it should not be so, since they are obviously embraced in the general terms of the act of 1804, on this subject, which directs *that all unseated lands shall be taxed*, and if these taxes are not paid in due time, that *they shall be sold.*

Judgment affirmed.